The first case this morning is 5-23-02-16, People v. Ordner. Arguing for the appellant is Elizabeth Boddy. Arguing for the appellee is Lynn Harrington. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is allowed to record these proceedings today. Good morning, counsel. How are you today? Good, thank you. Good morning, your honor. Apologize, we're running a little bit late. We're having some technical difficulties there. Install, I think, new computer things there in Mount Vernon. And I think we're getting those in chambers this week as well. And it's created a little bit of an issue, but we appreciate your patience. I wanted to touch on, before we get moving along with oral argument, Ms. Boddy, you filed a motion to cite additional authority Thursday or Friday, if I'm remembering correctly. I think we voted to grant that. I guess my question is, and I know since it was fairly last minute, I would ask counsel, do you intend to deal with that just an oral argument, or do you all wish to have some additional time to file any supplemental, brief, short supplemental briefs or anything that might be needed? I don't need any additional briefing. I can address it today. And again, I ask us, it came in kind of late. I just want to make sure Ms. Harrington, you know, has enough time or had enough time to be prepared on it. Thank you, Justice Bowie. Yes, I've had plenty of time to prepare on it. And I also do not need supplemental briefing. However, if the courtroom would like that, I'm happy to do so. Uh, I don't myself. I don't know if Justice McKinney or Justice Scholar, I would ask them if they need it. No, no. Okay. I just wanted to make sure we were taking care of our counsel. All right. With all that being said, Ms. Boddy, go right ahead. Good morning. My name is Elizabeth Boddy from DePaul's legal clinic, and I represent Sarah Ordner on appeal. Of the three issues raised on appeal, I would like to begin with argument two. And if time permits, move on to argument one. Argument two, the issue is whether the state proved beyond a reasonable doubt that Sarah was under the influence of an intoxicating compound to such a degree that it rendered her incapable of driving safely. The state's case rested entirely on Officer Carr's testimony. And given the nature of the substance at issue here, whether it's lorazepam or Concerta, the state was required to provide a foundation for the officer's implied opinion that Sarah was under the influence of lorazepam. In this regard, People v. Goekman did not overrule this court's decision in People v. Van Zandt or the related cases, such as People v. Workman and People v. Jackwith. In Goekman, the court held that an officer does not have to be qualified as an expert to give his opinion based on the totality of the circumstances that he had probable cause to arrest someone for DUI based on a drug. The court in Goekman said that if an officer bases his opinion on field sobriety tests, his expertise is an issue. And the court also said that the officer's training and experience is relevant to the reliability of his opinion. So put another way, an opinion given by an officer with specialized training or extensive experience will be more reliable than an opinion given by a rookie officer. Post-Goekman, the appellate court has issued decisions consistent with that principle in, for example, People v. Monday, People v. Walker, and People v. Trotter. And in those cases, the court held that the officer's opinion lacked this required foundation or the training and experience to reliably opine that the defendant was under the influence of drugs. And so the court reversed the defendant's convictions outright. And the same holds true here. Officer Carr did not say he had any experience in detecting impairment due to lorazepam or Concerta. He did not say he had any training in detecting impairment due to lorazepam or Concerta. He never said he witnessed anyone under the influence of lorazepam or Concerta. He did not say how much of the drug would cause a significant effect or how the drug would impair one's ability to drive. The controlled substances statute of which the court took judicial notice does not speak to that. The officer knew only that lorazepam is a depressant and Concerta is a stimulant. That's simply not enough for his opinion to be reliable and to support proof beyond a reasonable doubt. The remaining evidence doesn't support the inference that Sarah was under the influence of lorazepam or Concerta as opposed to her suffering a medical condition like narcolepsy. Sarah testified at trial that she has narcolepsy and that she suffered a narcoleptic episode that night. Her possession of Concerta, a prescription drug used to treat narcolepsy, corroborates her testimony. Let me stop you there, counsel. She testified to that fact. Did she offer any proof from a doctor that she actually had narcolepsy? And I'm trying to remember, did she actually have the prescription for the Concerta? Did she provide that? She did not provide the prescription. She just had a pill bottle with some Concerta pills in it. But that is a medication used to treat narcolepsy. And so that does substantiate her testimony that she suffered a narcoleptic episode that night. She also did not admit to being under the influence of either drug. She didn't admit to taking Concerta and she said she took only half a pill of lorazepam at some point earlier that day. Counsel, wasn't the trier fact free to find that her testimony was not credible? Trier fact was. The problem with the trial court's finding is though, the court inaccurately recalled the evidence. When the court found her guilty, the court specifically said she never testified to having a narcoleptic episode that night, which is not true. She did testify to that. So, you know, in every case, the trial court's findings are not conclusive, especially here where the court inaccurately recalled critical defense evidence. But she was parked on the side of the road, facing the wrong way and couldn't even get her license out of her purse. Right. She was in a very state of, she was asleep behind the wheel. And so when she woke up, she was, you know, disoriented and confused. She, the problem is, those are all facts showing impairment, but the state was required to prove that the impairment was caused by being under the influence of lorazepam or Concerta. And it didn't do that because the officer did not have the training or experience to reliably opine that she was under the influence of one of those drugs to such a degree that it rendered her incapable of driving. There was no scientific evidence she was under the influence. She gave a reasonable explanation. She did not admit to being under the influence. Her behavior is arguably consistent with a number of scenarios. It's arguably consistent with her being under the influence of alcohol or her being under the influence of a drug or her suffering from a medical condition like narcolepsy. The state was required to prove that the impairment was caused by being under the influence of one of those drugs. And it's easy to speculate that impairment was caused by that, but a conviction can't be based on speculation. This court can't presume that the drugs caused her impairment. The state was required to prove beyond a reasonable doubt that the impairment was caused by one of those drugs. And the state's case hinges on the officer's testimony. The officer simply did not have the training or experience necessary to reliably opine that she was under the influence. Counsel, you mentioned scientific evidence. Are you suggesting that it's required? No, I'm suggesting that that is a factor that the court could consider. We don't have that. So the point is, what we have is only the officer's testimony. And here in this case, it's not enough because he didn't have the training or experience necessary to give a reliable opinion that her impairment was due to being under the influence of lorazepam or Concerta. And that- What about her refusal to submit to the urine test? That is a factor this court can consider. The state in its brief said that is proof of intoxication incited to statute. The statute just says that her failure or her refusal is a factor the court can consider. It's admissible. It's not dispositive. And there are cases where, I believe it's Walker, where the defendant's urine tested positive for PCP and marijuana. And that didn't prove that he was under the influence of the drugs. Just proved that at some point he ingested those. Well, she also nailed all those fetal sobriety tests, didn't she? She did. So again, that's proof of impairment. That doesn't prove what caused the impairment. In all the cases, in Van Zandt, in Jackwith, in Workman, in Monday, in Walker, in all those cases, there was significant proof of impairment. But the convictions were reversed because the state didn't prove that a drug caused that impairment. And that's the problem we have here. Because the only evidence the state has is Officer Carr's testimony. And it's simply not enough in this case, because he lacked the training experience to reliably opine that she was under the influence of one of those drugs. This court should adhere to its decision in Peeble versus Van Zandt and follow related cases like Monday and Walker and Trotter and find that the state failed to prove beyond a reasonable doubt that Sarah's impairment was caused by being under the influence of lorazepam or Concerta. I see that I have about a minute left. I can briefly touch on argument one, if this court has any questions. The state charged Sarah with being under the influence of an intoxicating compound under subsection A3 of the DUI statute. The problem is lorazepam or Concerta is not an intoxicating compound. The state has not come up with a single case saying that lorazepam is an intoxicating compound, and that's because it's not. Intoxicating compounds are not defined under subsection A3, but subsection A6 does define them as those substances specifically listed in the Intoxicating Compounds Act. Lorazepam and Concerta are not listed in that act. They're listed in the Controlled Substances Act, which alone proves that they are drugs under A4, but not intoxicating compounds under A3. If there's any ambiguity as to the meaning of intoxicating compound, that ambiguity is resolved when we look at the legislative history of the subsection A3. The legislator intended a very narrow definition of that, and the intoxicating compounds, they meant for them to be listed, those substances listed in the Intoxicating Compounds Act, and they said they largely consist of chemicals used in aerosol propellants. There was a concern about the term being too broad, and one congressman said it's not too broad because we're only talking about the substances specifically enumerated in the Intoxicating Compounds Act. Lorazepam is not one of them. The state could have charged Sarah under A4. It didn't. It charged her under A3, and it was required to prove that charge without variance, which it failed to do because lorazepam is not an intoxicating compound. I see that my time is up. I ask that this court, under any of the three arguments, reverse Sarah's conviction outright. Well, thank you, Counsel. Before we move on, Justice McHaney or Justice Schiller, do you have any questions at this point? No further questions. No further questions. Obviously, Counsel, you'll have your rebuttal time. Ms. Harrington, go right ahead. Thank you, Your Honor. Good morning, Your Honors. Counsel, may it please the court, my name is Lynn Harrington, and I represent the people of the state of Illinois. Your Honor, since Counsel decided to go with the second issue first, I'd be happy to address her allegations with regard to that issue. First, Your Honors, the Illinois Supreme Court case of People v. Gochman controls here, and it doesn't matter how many other appellate court cases that Counsel cites, the fact of the matter is the facts in Gochman are extremely similar to the facts in this case. The distinguishing factors of the other appellate court decisions is that in those cases, the defendant never admitted to taking a drug. There might have been drugs found or the smell of burnt cannabis in the car. This is a totally different case. In Gochman, the defendant himself said, well, I took a Tylenol-3 with codeine, and he was acting very strange and giddy and asking the police officer if he could get in the car with him and he'd take him for a ride. Then he started threatening the police officer and the police officer's family. So in reversing the appellate court's decision, the Illinois Supreme Court said, wait a minute, we've got plenty of evidence of impairment here, circumstantial evidence that, plus the fact that the defendant admitted himself he was taking Tylenol-3 with codeine was enough to prove that he was under the influence. Here, that's exactly what happened, Your Honor. The defendant says that she took a half a pill of lorazepam. And with regard to that argument, Your Honors, I'd like to note that the defendant incorrectly says that that's the state's evidence. The state's evidence is that Deputy Carr testified that defendant said she took half a pill of lorazepam. But we don't know how much she took or if she took lorazepam or the Concerta, which was found in an unmarked pill bottle in her purse because she refused to take the urine test. Therefore, we couldn't figure out the dosage. And that's why she was charged under Section 501A3 of the code. Here, we've got her admitting at least to lorazepam. We've got a reasonable inference. She's got another controlled substance, which her counsel stipulated to was a controlled substance found in her purse. We've got her parked going the wrong direction, very difficult to wake up. Even Jeannie Kemper tried. Finally, Deputy Carr got her to wake up. Her speech was slurred. She couldn't easily find her license in her purse, even though Deputy Carr testified that he easily could. And she failed field sobriety tests, Your Honors. Just like in Gochman, that circumstantial evidence, along with statutorily permitted evidence of intoxication by her refusal to take the urine test is proof beyond a reasonable doubt, especially taken in the light most favorable to the prosecution. The defendant here was proven guilty of Section 501A3 of the vehicle code. Walker, the case that defendant cites in her motion to cite additional authority is completely dispositive of the incident case. First of all, most importantly, Walker is a case where the prosecution conceded that it did not prove the case beyond a reasonable doubt. That's the biggest red flag. But in Walker, the defendant also never admitted to taking drugs. He was involved in what looked like quite a serious crash. So yes, when he got out of the car, he was confused. But the state trooper said he didn't sway. When he got to the hospital, the nurse said he was oriented as to time and place. Only his pupils were sluggish. So even though he acted strangely in the ambulance, one can say that that was from shock of the car accident. There simply was not enough evidence there. Unlike the incident case, that defendant never admitted that he was under the influence of any drugs. I'd like to also then go back to the initial argument, which is very important here, your honors. It does not matter whether the razopam and concerta, or whether intoxicating compounds are controlled by the Intoxicating Compound Act under Section A3. But first I'll state, as I did in my brief, that of course they're not, because it's not in that section. And there's a reason it's not in that section. When it's in A6, we look at the legislative intent. If the legislature wanted it in A3, it would have put it in A3. Instead, it put it in A6. But it doesn't matter. Because when you look at the use of Intoxicating Compounds Act, although counsel talks about the legislator wanting it very, very limited, well, they must not have, because they clearly put in a catch-all phrase here. They clearly put in that the use of Intoxicating Compounds Act contains any other substance for the purpose of inducing a condition of intoxication, stupefication, depression, giddiness, paralysis, or irrational behavior. That parallels what the court took judicial notice of here, that these drugs cause impaired consciousness and awareness. Also, Your Honor, in her brief, the defendant complains about the trial court looking at the definition in Illinois Pattern Jury Instruction 4.25 of an intoxicating compound. But again, if you look at 4.25, it mimics the Illinois Use of Intoxicating Compound Act. Section 2 and 3 of 4.25 is taken right from the Use of Intoxicating Compounds Act. So here, whether you look at the dictionary definition, which talks about stupefication, whether you look at the Use of Intoxicating Compounds Act, whether you look at IPA 4.25, lorazepam and concerta fit under all of these definitions. And for that reason, Your Honor, the defendant was properly proven beyond reasonable doubt of intoxicating compounds under Section 501A3. And as the state argued in its brief, Your Honors, in the alternative, if this court finds that Section A3 is not appropriate, which would, of course, be against its earlier decision of People v. Van Zandt, where it said, if you don't know what the combination of drugs are, then you charge under A3. However, if the court does not think that that is appropriate, it is still appropriate under this court's authority pursuant to Illinois Supreme Court 615B3 that you can reduce the conviction or change the conviction to an A4 because it's a lesser included of A3. It's A4 is drugs, A3 is intoxicating compounds. Now, not all intoxicating compounds are drugs, but all drugs are intoxicating compounds by this definition, Your Honor. So if the court feels that that is appropriate, that is absolutely acceptable to the prosecution. Finally, Your Honors, the defendant was proven beyond a reasonable doubt when taking all the evidence in light most favorable to the prosecution that she was in actual physical control of her vehicle. Our Illinois Supreme Court said in People v. Watson, when those facts were, a defendant sleeping across the front seat of a car with a engine running was in actual physical control of the vehicle. That's exactly what happened here. Deputy Carr testified that the lights were on, the engine was running. Deputy Carr testified that defendant said she pulled over because she was sleepy. Well, obviously if you're pulling over, you're driving the vehicle. A person does not need to drive to be in actual physical control, nor is a person intent to put the car in motion relevant to the determination of actual physical control. Here again, Deputy Carr testified the lights were on, the car was running. The trial court specifically found defendant to be incredible. And not only did it find her to be incredible, it found that based on her level of intoxication, he seriously doubted, those were the trial court's words, he seriously doubted she could even remember anything that went on that evening. And finally, Your Honor, the defendant's claim about the fob and that without possessing the fob, the vehicle could not run, that's simply a red herring because of the fact that her own father testified on cross-examination that once the key fob has been used to start the car and it was running, the car could drive. So we have that testimony in addition to Deputy Carr's testimony that the car's lights were on and it was running is plenty of evidence that defendant was in actual physical control of the vehicle. I see that my time is almost up. If there are no questions, I can conclude, Your Honors. Justice McHaney or Justice Schiller, do you have any questions? No questions. No questions. Thank you, Your Honors. For all these reasons and the reasons stated in the prosecution's brief, the people respectfully request that this honor affirm the trial court's judgment. Thank you. Thank you, counsel. Ms. Boddy, you ready for your rebuttal? Yes. Go right ahead. To argument one, defining intoxicating compound through the dictionary meaning or through the catch-all vision not only contravenes the legislative intent, but more importantly, it renders superfluous the remaining subsections of the act. A2, A4, A6, those have no meaning. If an intoxicating compound means something that stupefies or excites someone, well then, drugs fall under that, alcohol falls under that, and there's no need to have subsection A2, subsection A4, or subsection A6. And we presume the legislator did not intend in such an absurd result, we presume the legislator intended each subsection to have its own purpose and meaning. The state could have charged Sarah with under A4, it didn't. The state mischaracterizes Van Zandt. Van Zandt did not say, if you don't know the substance, charge the defendant under A3. That's not at all what Van Zandt said. Van Zandt was talking about that the same level of intoxication for conviction under A2 is not required for conviction under, for DUI based on a combination of drugs and alcohol. It did not say that if you don't know the substance, go ahead and charge under A3. A4 is not, a violation of A4 is not a lesser included offense of a violation of A3. They deal with different substances. A4 deals with controlled substances, drugs. A3 deals with intoxicating compounds. The state didn't cite a single case saying that a violation of A4 is a lesser included offense of A3 because no such case exists. As to argument two, the facts of Gopin are not similar to the facts of this case. First of all, Gopin deal with the probable cause, whether or not the police officer had a probable cause to make an arrest. Second of all, there were a host of factors that suggested to the officer that the driver was under the influence of heroin. The driver had fresh needle marks on his arm. He had a can of Red Bull that was cut in half that was used to cook the heroin. He was found in that can tested positive for opiates. He had other drugs in his wallet. He showed significant signs of impairment and the state can go on and on and on and talk about the signs of impairment. Yeah, the state was required to prove impairment, but not just impairment. The state was required to prove that the impairment was caused by Sarah being under the influence of either Lorazepam or Concerta. And it didn't do that. And in all those cases that I cited in our briefs, there were significant signs of impairment. Nonetheless, the court reversed the defense convictions because the state didn't prove the cause of that impairment. There's a difference between admitting to ingesting a drug and admitting to being under the influence. There are several cases, People v. Van Zandt, People v. Trotter, where the People v. Workman, People v. Workman, where the defendant admitted to consuming drugs. In Van Zandt, the defendant admitted to taking Adderall. In Workman, the defendant admitted to taking several pills of Lorazepam. In Walker, the defendant's urine tested positive for cocaine and PCP. There's a difference. So yes, you can admit to taking a drug. That doesn't mean you're under the influence of that drug. If Sarah took Lorazepam at some point earlier that day, that doesn't mean she was under the influence of it at the time of her arrest. The point is there's a difference between admitting to being under the influence and admitting to taking a drug. Sarah did not admit to being under the influence. She admitted to taking the drug at some point earlier that day. And that's not enough for her, for the state to prove her conviction beyond a reasonable doubt. As to argument three, the officer's testimony, for the reasons provided in our brief, his testimony is not credible. His testimony was contradicted by a neutral eyewitness who said Sarah's car was not running. The lights were off. Sarah testified she did not have the key fob. The police report makes no mention of the car being running or the lights being on. Or recovering key fob. Sarah also said the key fob was broken and the only way to start the car in her 2000 Hyundai was to use the actual key in the center console. The officer originally said that the key was in the ignition. There is no ignition keyhole in her car. So for those reasons, the officer's testimony is not credible. For any of the reasons argued today and in our briefs, I ask that you reverse Sarah's conviction outright. Well, thank you, counsel. Before we let you two go, Justice McKinney or Justice Schiller, do you have any questions? No questions. Well, thank you, counsel. Obviously, we'll take the matter under advisement. We will issue an order in due course.